## The Blenheim.

## The San Carlos.

*(District Court, D. Massachusetts. December 14, 1882.)*

COLLISION—SPEED OF STEAMER—FAULT.

> A steam-vessel but little under control of her helm, owing to the retarding influence of the mud, in which her bottom is dragging, when approaching a sail-vessel in the night-time, in a narrow channel, nearly end on, with a combined speed of at least nine knots, is bound to slacken her speed.

In Admiralty.

*A. A. Strout,* for the San Carlos.

*Frank Goodwin,* for the Blenheim.

NELSON, D. J. These are cross-libels for damage by a collision between the British steamer Blenheim and the American brigantine San Carlos, which occurred between 7 and 8 o'clock P. M. of the twenty-ninth of October, 1878, off the mouth of the Demerara river, British Guiana. At the entrance of the river on the easterly side is a light-house, and about 12 miles distant from the light-house, and bearing N. N. E. ½ E. from it, a light-ship is anchored. The course

between the light-house and the light-ship marks the line of the channel for sea-going vessels across the bar, whch extends out some miles into the ocean from the mouth of the river, and the place of the collision was about midway of this channel. The wind was E. by N., blowing a fresh breeze and baffling a point or two; the night was dark, the weather fine and clear, and the water smooth. The channel where the collision occurred was about half a mile in width. The San Carlos, of the burden of 413 tons, and drawing 16 feet and 2 inches, and loaded with 580 tons of coal, was proceeding on a voyage from Glasgow to Georgetown, on the Demerara river. The Blenheim, a large sea-going steamer, drawing 17 feet and 2 inches, had just left the port of Georgetown and was bound for England. Both vessels had their regulation lights set and burning. In the collision the stem of the Blenheim struck the San Carlos on the starboard side at the fore-rigging, cutting her down to the water's edge and causing her to sink immediately. As the San Carlos lay on the bottom after sinking, her bow was pointed about S. E. She was afterwards blown up to clear the channel from the obstruction of the wreck. The injury to the steamer was slight, and mostly on the port side of the stem. The depositions of the pilots who were on board of the two vessels have not been taken in the case.

The evidence on the part of the San Carlos comes from the depositions of all the officers and men who were on board at the time of the collision. From these it appears that the San Carlos arrived at the light-ship at 5 in the afternoon, and took a pilot and proceeded on her voyage towards the mouth of the river; that her course after leaving the light-ship was S. W. by S. ½ S., the wind blowing on the port quarter; that about 7 o'clock the lookout saw a little on the starboard bow the light of the steamer coming out of the river and reported the same to the pilot, who thereupon caused the San Carlos to luff a half a point, and she afterwards continued on that course, S. S. W.; that in about 20 minutes after the steamer was first discovered, being still on the starboard bow of the San Carlos, the steamer suddenly ported her helm and run directly across the track of the San Carlos, which was proceeding under full sail; that when the collision had become imminent, by order of the pilot the fore-yards were hauled back and the peak of the mainsail dropped for the purpose of deadening her way, but that no change of helm or of course was made up to the time of the collision.

The evidence for the Blenheim is contained in the depositions of her master, her first and second officers, and her engineer. The case

made for the Blenheim, upon the depositions of her master and her first and second officers, is that she left the wharf at Georgetown at 6 P. M. A short time after passing the light-house, the course of the steamer being between N. N. E. ½ E. and N. E. by N., the two lights of the San Carlos were observed about two miles off, a little on the port bow, and the pilot then gave the order to put the helm to port. When within about a half a mile of the San Carlos, seeing that the steamer moved sluggishly under the port helm, owing to her dragging in the mud on the bar, and still seeing the two lights of the San Carlos on the port bow, the pilot ordered the helm to be put hard a-port; that immediately afterwards the San Carlos was observed shutting in her red light, and the pilot called out, "Hard a-port—is the helm hard a-port?" and gave the order, "Full speed astern;" that the San Carlos still came on, showing only her green light, and it could then be seen that the San Carlos had luffed and hauled her foreyards aback, and immediately after this the vessels came together.

Upon examining carefully the depositions in the case I see no reason to doubt the substantial accuracy of the case made by the San Carlos. The examination of her officers and men was full and complete; nothing appears in their depositions to throw discredit on their story, or to show any fault on their part. They all agree that no change of course was made previous to the collision, and that the hauling in of the port braces was after the collision had become apparently inevitable, and that the object of the maneuver was only to lessen the headway. On the other hand, several facts appear in the depositions of the officers of the Blenheim which indicate an absence of that degree of care which they were bound to exercise. The chief officer, who was on the lookout, swears that he saw the lights of the San Carlos when two miles distant, but did not report to the pilot until the red light was shut in and the vessels were not more than half a mile apart. His excuse is that he heard the first order of the pilot to port the helm, and supposed the pilot saw the lights as soon as he did. The master, who was on the upper bridge with the pilot, says that both he and the pilot saw the lights when two miles away, and that the first order to port was given in consequence of their seeing them. But it is left to conjecture, upon the evidence, whether the pilot continued to observe the lights until the report of the lookout. For all that appears, he was depending upon the lookout to keep them in sight and report to him. Such a failure of duty on the part of the lookout being shown, the steamer is bound to prove clearly that this neglect could not have contributed to cause the disaster.

Again, it appears that owing to the retarding influence of the mud, the combined effect of the first order to port and the second order to hard a-port was only to alter the course of the steamer about three points. A steam-vessel so little under the control of her helm as this one was, approaching a sailing vessel in the night-time, in a narrow channel, nearly end on, with a combined speed of at least nine knots, was bound to slacken her speed. The Blenheim continued at full speed until almost the moment of collision, and the first order to the engineer was "full speed astern." So slight was the change of course of the steamer that both lights of the brigantine continued in sight from the time they were first sighted until the vessels were within a half a mile of each other. Such conduct seems to me, under the circumstances, to have been gross negligence.

It is insisted on the part of the Blenheim that she struck the barkentine at right angles with the latter's hull, and that this proves a change of course by the barkentine. If the fact were proved, I think the conclusion would follow, since the two vessels were sailing on very nearly opposite courses in the line of the channel, and the change of the steamer under the operation of her port helm was only three points, if the blow was a square one, the sailing vessel must have changed her course from two to three points. But I do not think the fact is proved. The position of the San Carlos, as she lay on the bottom, six points off her sailing course, is fully accounted for as the effect of the steamer's blow at her fore-rigging, and the injuries on the port side of the steamer's stem cannot overcome the testimony of the officers and crew of the San Carlos that the blow drove her across the channel. I am of the opinion that the preponderance of the evidence proves that the San Carlos kept her course, and that the disaster was caused by the fault of the Blenheim in running across her bows.

Both the libel and the answer of the owners of the Blenheim contain averments as to the laws of British Guiana in relation to compulsory pilotage. No proofs were offered to sustain them, and they were not relied on at the hearing. In the case against the owners of the San Carlos the libel is to be dismissed with costs; in the case against the Blenheim there is to be an interlocutory decree for the libelants. Ordered accordingly.